CITY OF GARLAND, Texas, and
Ron Holifield, Appellants,

v.

THE DALLAS MORNING
NEWS, Appellee.

No. 05–95–01350–CV

Court of Appeals of Texas,
Dallas.

May 13, 1998.

Mark E. Dempsey, Assistant City Attorney, Garland, for Appellants.

Paul C. Watler, Stephen E. Fox, Jenkens & Gilchrist, P.C., Dallas, for Appellee.

## OPINION

KINKEADE, Justice.

City of Garland, Texas ("Garland") and Ron Holifield ("Holifield") appeal the judgment granted in favor of The Dallas Morning News ("the News") in this lawsuit concerning the Texas Open Records Act ("the Act"). In three points of error, appellants contend that the trial judge erred by: (1) granting the News's motion for summary judgment; (2) denying appellants' motion for summary judgment; and (3) denying appellants' request for a jury trial on the issue of attorney's fees. We overrule points of error one and two and affirm the portion of the summary judgment that the record is public but on grounds different from those articulated by the trial court. We sustain point of error three, and reverse and remand for a new trial on attorney's fees.

## FACTUAL BACKGROUND

In August 1993, Garland's city manager, Ron Holifield, sought to remove James Hager from his position as Garland's director of finance. Holifield prepared a draft memorandum concerning a possible resolution of Hager's employment ("the Memorandum"). On August 31, 1993, the Memorandum was considered at a closed executive session of the Garland City Council attended by the Garland city attorney. Following this meeting, Holifield decided not to pursue the strategy outlined in the Memorandum.

On September 13, 1993, the News sent Garland a letter requesting under the Texas Open Records Act "[a]ll written communications (including, but not limited to, memos ... ) concerning Mr. Hager's termination as Finance Director and/or his assignment to new duties." On September 23, 1993, Garland sent the News a letter declining the request on the basis that there were no documents that constituted public information or that were not excepted from disclosure under the Act. The News replied to Garland's letter, stating that Garland's reason was inadequate under the Act. The News further pointed out that Garland had not sought an attorney general's opinion within ten days of the request, thereby creating the presumption that the requested documents were public information. *See* TEX. GOV'T CODE ANN. §§ 552.301–.302 (Vernon 1994). The News threatened to bring a mandamus action if Garland did not turn over the documents.

On October 5, 1993, Garland filed suit in district court seeking a declaration that the requested documents were not subject to disclosure under the Act. Garland submitted to the court, *in camera*, four documents it considered responsive to the request, including the Memorandum. The News counterclaimed against Garland and against Holifield in his official position as city manager and statutory custodian of records. In the counterclaim, the News sought a writ of mandamus for disclosure of the documents and attorney's fees. During the course of the litigation, Garland released three of the four documents submitted *in camera*, conceding the three documents were no longer covered

by the asserted litigation privilege because Garland had settled its dispute with Hager. Garland and the News filed motions for summary judgment based on the Memorandum, the only remaining document. Holifield did not file a motion for summary judgment, but joined Garland's response to the News's cross-motion for summary judgment.

In its motion for summary judgment, Garland alleged that it was entitled to summary judgment because the Memorandum is: (1) not a "public record" because it was not collected, assembled, and maintained in connection with the transaction of official business; and (2) excepted from disclosure under the Act. The News, on the other hand, alleged in its motion for summary judgment that: (1) Garland, as a governmental body, was not entitled to use a declaratory judgment action to obtain relief under the Act; (2) Garland failed to request an attorney general's opinion and, therefore, the requested document was presumptively public information and subject to disclosure under the Act; and (3) Garland failed to make a compelling demonstration that any of its claimed exceptions preclude public disclosure. Therefore, according to the News, it was entitled to a writ of mandamus compelling appellants to produce the document.

The trial judge denied Garland's motion for summary judgment and granted the News's motion. The court found that Garland's failure to obtain an attorney general's opinion within ten days as to whether the records were subject to an exception to disclosure under the Act: (1) prohibited Garland from filing the subject declaratory judgment action; (2) constituted a failure to exhaust administrative remedies; and (3) caused the document in question to become public information. Accordingly, the trial court granted a writ of mandamus compelling Garland and its custodian of records to release and produce the requested document to the News. Because there were fact issues about the amount of attorney's fees, the trial judge denied the News's motion on the issue of attorney's fees.

Garland requested a jury trial on the issue of attorney's fees. The News objected to a jury trial, and the trial judge sustained the

objection. After hearing evidence, the trial judge ordered Garland to pay the News $45,-184.64 in attorney's fees and costs through trial, as well as additional attorney's fees in the event of an appeal. The trial court did not assess costs and attorney's fees against Holifield. This appeal followed.

## SUMMARY JUDGMENT

In point of error one, appellants contend the trial court erred in granting the News's motion for summary judgment. In point of error two, appellants contend the trial court erred in denying their motion for summary judgment. Appellants argue these two points together. Likewise, we will address the points of error together.

### Standard of Review

We review a summary judgment using the following well-known procedures:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

2. In deciding whether a disputed material fact issue exists, we accept as true evidence favorable to the nonmovant.

3. We indulge in every reasonable inference and resolve any doubts in the nonmovant's favor.

*See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex. 1993); *Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex.App.—Dallas 1996, writ denied). Neither party can prevail because of the other's failure to discharge its burden. *Guynes,* 861 S.W.2d at 862; *Howard,* 933 S.W.2d at 216. When both parties move for summary judgment, we consider all the evidence accompanying

both motions in determining whether to grant either party's motion. *Howard,* 933 S.W.2d at 216; *Benchmark Bank v. State Farm Lloyds,* 893 S.W.2d 649, 650 (Tex. App.—Dallas 1994, no writ). When the grounds on which the trial court granted summary judgment are incorrect, it is appropriate to consider grounds for summary judgment on which the court did not specifically rule, if they have been properly preserved. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996).

### Texas Open Records Act

The Texas Open Records Act provides public access to governmental documents. *See generally* Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 594–607, *amended by* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, §§ 2–25, 1995 Tex. Gen. Laws 5127, 5127–42 (codified at TEX. GOV'T CODE ANN. §§ 552.001–.353 (Vernon 1994 & Supp.1998)).[1] Section 552.021 of the government code provides that information is public information if, in connection with the transaction of official business, it is collected, assembled, or maintained by a governmental body. *See* TEX. GOV'T CODE ANN. § 552.021(a) (Vernon 1994). If information is public, it must be made available to the public during normal business hours of the governmental body. *Id.* § 552.021(b). The act contains twenty-three exceptions to the requirements of section 552.021 for various categories of information. *See id.* §§ 552.101–.123.

If the governmental agency receives a written request for public information that it considers as falling under one of the statutory exceptions to disclosure, it may provide the information or, if it chooses not to disclose the information, it may request the attorney general to determine whether the information is statutorily excepted from disclosure. *See id.* § 552.301. If the governmental body fails to request the attorney general to review the information, then the information "is presumed to be public." *Id.*

1. Because the request for information in this case was made before September 1, 1995, the 1995 amendments to the Act do not apply to this case. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 26, 1995 Tex. Gen. Laws 5127, 5142.

All citations to the Act will be to the relevant sections of the Texas Government Code as it existed between September 1, 1993 and August 31, 1995.

§ 552.302. Once requested information is presumed to be public information because of the governmental body's failure to make a timely request for the attorney general's opinion, the party requesting the information may seek a writ of mandamus to compel release of the information. *See id.* § 552.321.

### The News's Motion for Summary Judgment

The News filed its motion requesting the trial judge grant summary judgment, dismiss appellants' declaratory judgment action, and grant a writ of mandamus compelling production of the requested documents. In the motion, the News contended it was entitled to summary judgment because, among other things, (1) Garland failed to seek a determination by the attorney general, thus creating a presumption that the information was public; and (2) Garland failed to produce evidence of a compelling reason that the information should not be released to the public.

Appellants opposed the News's motion and Garland cross-moved for summary judgment, asserting the Memorandum is (1) not a "public record" because it was not collected, assembled, and maintained in connection with the transaction of official business, and (2) excepted from disclosure under the Act.

### 1. Public Information

■ Appellants maintain that the trial court erred by granting the News's motion for summary judgment because the News failed to prove as a matter of law that the Memorandum contains "public information" subject to the Act. According to appellants, the Memorandum does not fit section 552.021(a)'s definition of public information because "the document was not used to transact any official business." We disagree.

Section 552.021(a) provides that information is public information if it is collected, assembled, or maintained by a governmental body in connection with the transaction of official business. *See* TEX. GOV'T CODE ANN. § 552.021(a) (Vernon 1994). A municipal governing body is a "governing body" for purposes of the Act. *See id.* § 552.003(3). Appellants do not assert that Garland did not collect, assemble, or maintain the document;

rather, they argue that because the position advocated in the Memorandum was "abandoned," the Memorandum did not transact any official business. Without citing any authority, appellants assert a document that is not the final expression of an official decision or position cannot transact official business.

Appellants' argument ignores the clear language of the statute defining public information as information that is collected, assembled, or maintained "in connection" with the transaction of official business. *See id.* § 552.021(a). The undisputed summary judgment evidence shows that Holifield, Garland's city manager, drafted the Memorandum in preparation for terminating Hager from his position as Garland's director of finance. Holifield took the Memorandum to a city council executive session, distributed it to council members, and discussed it in connection with personnel issues. The council's discussion of the personnel problems Garland was experiencing was clearly "the transaction of official business" of the city. While it is true that Garland opted not to follow the course of action outlined in the Memorandum, the undisputed evidence shows the Memorandum was used "in connection" with the council's discussion. Consequently, we conclude the Memorandum was assembled, collected, and maintained in connection with the transaction of official business.

Garland reasons that to categorize a draft document such as the one in this case "public information" would chill the frank discussion of legal or policy matters. This argument is misplaced. The policy underscoring the Act is that government is the servant of the people and each person is entitled to complete information about the official acts of public officials and employees, unless otherwise expressly provided by law. TEX. GOV'T CODE ANN. § 552.001(a) (Vernon 1994). In keeping with the policy of the Act, the legislature defined "public information," thereby creating a broad category of information that is deemed public. To protect other important policies that could conflict with the unfettered dissemination of public records, the legislature created certain exceptions to the "public information" definition. *See id.* §§ 552.101–552.124.

In this case, Garland relies on the agency memoranda exception to protect the Memorandum from disclosure. *See id.* § 552.111. The purpose of this exception is to protect advice and opinions on policy matters and to encourage frank and open discussion within the agency in connection with its policy-making process. *See Texas Dep't of Pub. Safety v. Gilbreath*, 842 S.W.2d 408, 412 (Tex. App.—Austin 1992, no writ). By arguing that this policy consideration renders the information not public, Garland misconstrues the application of the agency memoranda exception. Only after determining that the information is public and, therefore, subject to the Act do we consider whether an exception applies. Whether the information is excepted from disclosure is irrelevant to the initial question of whether the information is public and, therefore, governed by the Act.

We decline to hold that the Memorandum is not public because it was discussed but not followed. We conclude the trial court correctly determined that the Memorandum constitutes public information as defined in section 552.021(a) and is thus governed by the Act.

## 2. Public Information Presumption

Appellants next assert that the trial court erred by granting the News's motion for summary judgment because the Memorandum is excepted from disclosure under section 552.111 of the Act, which excepts inter-agency or intra-agency memoranda or letters that would not be available by law to a party in litigation with the agency. *See* TEX. GOV'T CODE ANN. § 552.111 (Vernon 1994). The News replies that Garland waived its right to rely on the statutory exceptions by failing to request an attorney general's opinion within ten days of the News's request.

### a. The Effect of the Presumption

Before deciding whether the exception applies, we determine the effect of Garland's failure to request an attorney general's opinion within ten days on its right to rely on the statutory exceptions. Relying on *Hancock v. State Board of Insurance*, 797 S.W.2d 379 (Tex.App.—Austin 1990, no writ), and Texas Attorney General opinions ORD–34 (1974)

and ORD–26 (1974), the News argues that Garland's failure to seek an attorney general's opinion within ten days of the News's request for information resulted in a waiver of Garland's right to rely on any of the statutory exceptions. The News argues that once a governmental entity misses the ten-day deadline and the information is presumed to be public, the governmental entity can overcome the presumption only by a compelling demonstration that the information should not be made public. *See Hancock*, 797 S.W.2d at 381 (citing Tex. Att'y Gen. ORD–26 and ORD–34). The News also claims that failing to request an attorney general's opinion constitutes waiver of the Act's exceptions based upon governmental interest in nondisclosure, including the exception on which Garland relies.

In ORD–26, the attorney general responded to a late request for an opinion on whether certain public documents fell within an exception to the Act and were, therefore, protected from disclosure. Without deciding whether the exception would apply and without citing any authority, the attorney general determined that only a "compelling demonstration" would overcome the presumption of public information that arose when the ten-day deadline was missed. Tex. Att'y Gen. ORD–26 at 2; *see also* Tex. Att'y Gen. ORD–34 (following ORD–26). So far, the attorney general, noting that this list is not exclusive, has enunciated the following four compelling reasons: (1) a different governmental body needs to prevent disclosure of the information; (2) disclosure of the document would interfere with the privacy rights of a third party; (3) the information includes a third party's trade secrets; and (4) disclosure of the document is forbidden by law, other than the exceptions in the Act. *See* Tex. Att'y Gen. ORD–630 (1994).

Few Texas courts have addressed this issue. In *Hancock*, the Austin court of appeals, relying solely on ORD–26 and ORD–34, adopted the compelling demonstration test. *See Hancock*, 797 S.W.2d at 379. Because we are not persuaded by *Hancock* and the attorney general's opinions, we decline to follow them. *See City of Houston v. Houston Chronicle Publishing Co.*, 673 S.W.2d

316, 322 (Tex.App.—Houston [1st Dist.] 1984, no writ) (although attorney general's opinions are entitled to due consideration, they are not binding on the courts); *see also Gilbreath*, 842 S.W.2d at 412 (attorney general decisions under the Act are subject to judicial review).

By concluding that a governmental entity must make a compelling demonstration to overcome the presumption of openness that arises upon the entity's failure to request an attorney general's opinion within ten days, the *Hancock* court and the attorney general's opinions misconstrue the statutory presumption. They effectively hold that once the ten-day deadline has been missed, the governmental entity is precluded from relying solely on the Act's statutory exceptions to demonstrate the document should not be released. These decisions imply a procedural default where none exists and fail to recognize the essential character of a presumption.

■■■ A presumption is a guide for courts in fixing the burden of producing proof. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993). When a presumption arises, it shifts the burden of producing evidence to the party against whom the presumption operates. *See id.* Once evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence. *Id.* The facts supporting the presumption remain in evidence and can support any reasonable inferences that may be drawn. *Id.* The presumption does not affect the burden of persuasion. *Id.*

■■■ Statutory presumptions operate in the same manner as presumptions developed through common law. *See, e.g.,* TEX. PROP.CODE ANN. § 92.109(d) (Vernon 1984); *Leskinen v. Burford*, 892 S.W.2d 135, 136 (Tex.App.—Houston [14th Dist.] 1994, no writ) (landlord who fails to return a tenant's security deposit or provide written documentation and itemization of deductions within thirty days after the premises are surrendered is presumed to have acted in bad faith; such presumption can be rebutted by evidence such as the landlord did not know he was not entitled to retain the deposit to recover for damages); TEX. GOV'T CODE ANN.

§ 2001.142(c) (Vernon 1997); *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex.1995) (presumption that attorney was notified by mail on a certain date may be rebutted by evidence that he actually received notice on another date). A statutory presumption is a rule of law requiring a trier of fact to reach a particular conclusion in the absence of evidence to the contrary. *English*, 896 S.W.2d at 169. Once evidence to the contrary is introduced, the presumption disappears. *Id.*

■■■ In drafting the statute at issue, the legislature chose the term "presumed." *See* TEX. GOV'T CODE ANN. § 552.302 (Vernon 1994). We interpret statutes as written and seek the intent of the legislature by the plain meaning of the terms used in the statute. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990). By requiring a compelling demonstration that the information should not be made public, *Hancock* and the attorney general's opinions misconstrued the clear language of the statute. The presumption does not raise the burden of persuasion to require the governmental entity to make a compelling demonstration of why the information should not be public. *See Saenz*, 873 S.W.2d at 359 (presumptions do not affect the burden of persuasion). There is no basis in law for the compelling demonstration test.

The News argues that permitting evidence of an exception to defeat the presumption effectively eliminates the statutory purpose of requiring the governmental body to request an attorney general's opinion on the applicability of an exception to disclosure. We disagree. If the governmental body requests an attorney general's opinion within ten days, no presumption attaches and the governmental body has simply to assert an exception under the statute. However, if, as in this case, the governmental body fails to timely request an attorney general's opinion, a presumption arises, creating a *prima facie* case that the records are public information. The presumption shifts the burden of production. *See id.* The governmental body then must bring forth evidence to support an exception. *See id.*

Additionally, other incentives may encourage the governmental entity to obtain an attorney general's opinion. The ten-day requirement facilitates a quick decision by the attorney general that may eliminate the formidable costs of litigation, as governmental entities usually abide by attorney general rulings. *See* Bob Etnyre, Comment, *The Texas Open Records Act: A Section–by–Section Analysis*, 14 HOUS. L.REV. 398, 430 (1977) (noting that governmental entities usually comply with attorney general rulings for two reasons: (1) public officials may avoid personal liability for official acts in reliance on attorney general's opinions; and (2) courts have expressed respectful consideration of attorney general's opinions).

 Because we conclude Texas Attorney General opinions ORD–26 and ORD–34 and *Hancock* erroneously construed the effect of the statutory presumption in the Act, we decline to follow these opinions. We hold there is no compelling demonstration requirement under the Act. A failure to request an attorney general's opinion within ten days does not require the governmental entity to respond with a compelling demonstration; rather, it simply shifts the burden to the governmental entity to produce evidence supporting its claim that an exception applies.

**b. Agency Memorandum Exception**

 We now turn to the merits of this case. When Garland failed to ask the attorney general whether the exception applied, the document became presumptively public information. TEX. GOV'T CODE ANN. § 552.302 (Vernon 1994). The burden then shifted to Garland to rebut the presumption with evidence that one of the exceptions applied.

On appeal, appellants rely only on the agency memoranda exception, excepting from disclosure interagency or intra-agency memoranda or letters that would not be available by law to a party in litigation with the agency. *See id.* 552.111. In its motion for summary judgment, Garland also relied on the exception found in section 552.101, known as the confidential by law section. Garland does not present this exception for consideration on appeal. We therefore limit our review to the sole exception presently

before the Court, the agency memorandum exception. We express no opinion on the applicability of section 552.101 or any of the remaining twenty-one exceptions of the Act.

 In support of its claim that § 552.111 applies, Garland produced the Memorandum itself, submitted to the court *in camera*, and Holifield's affidavit that explained the circumstances surrounding the drafting of the document. After reviewing the record, we conclude Garland's evidence failed to support its claim that § 552.111 applies, and thus Garland failed to rebut the presumption of openness that arose when Garland missed the ten-day deadline.

 Section 552.111, modeled after section 552(b)(5) of the federal Freedom of Information Act (FOIA), excepts only those internal communications consisting of advice, recommendations, and opinions reflecting the policy-making processes of the governmental body at issue. *See* 5 U.S.C. § 552; *Gilbreath*, 842 S.W.2d at 412; *Lett v. Klein Indep. Sch. Dist.*, 917 S.W.2d 455, 457 (Tex. App.—Houston [14th Dist.] 1996), *writ denied per curiam*, 41 Tex. Sup.Ct. J. 575 (1998). The purpose of the exception is to protect advice and opinions on policy matters and to encourage frank and open discussion within the agency in connection with its decision-making processes. *Lett*, 917 S.W.2d at 457 (citing *Gilbreath*, 842 S.W.2d at 412); *see also Austin v. City of San Antonio*, 630 S.W.2d 391, 393 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). The exception is "not an absolute shield," and should be construed in light of the Act's mandate that information about the affairs of government and the official acts of those who serve the public be freely available. *Lett*, 917 S.W.2d at 457 (citing *Gilbreath*, 842 S.W.2d at 412); *see* TEX. GOV'T CODE ANN. § 552.001 (Vernon 1994).

 Appellants ask this Court to interpret exception 11 of the Act in the same manner as exception 5 of FOIA, incorporating a "deliberative process privilege" into the exception. When the legislature adopts a state or federal statute from another jurisdiction, it is presumed the legislature intended to adopt the construction of that statute giv-

en by the courts of that jurisdiction. *See Blackmon v. Hansen,* 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943). Recognizing that presumption, we agree that federal decisions construing exception 5 of FOIA are instructive in our interpretation of exception 11 of the Act. *See A & T Consultants, Inc. v. Sharp,* 904 S.W.2d 668, 676 (Tex.1995) ("[T]he legislature enacted [the Act] to conform loosely to the federal Freedom of Information Act ..."); *see also Gilbreath,* 842 S.W.2d at 412; *Lett,* 917 S.W.2d at 457.

In interpreting exception 11 of the Act in light of the federal interpretations of exception 5 of FOIA, Texas courts have recognized two requirements embodied in the exception: (1) the communication must be deliberative, and (2) the communication must relate to the policy-making process of the governmental agency. *See Lett,* 917 S.W.2d at 457 (citing *Gilbreath,* 842 S.W.2d at 412). In order for Garland to rebut the presumption of openness and defeat the News's motion for summary judgment, Garland therefore had to present evidence that the Memorandum is deliberative and is related to Garland's policymaking process.

Purely factual information is not "deliberative" but a summary of factual material may be excepted if it is a part of the deliberative process. *See, e.g., Quarles v. Department of Navy,* 893 F.2d 390, 392 (D.C.Cir.1990); *see also Dudman Comm. Corp. v. Department of Air Force,* 815 F.2d 1565, 1568 (D.C.Cir.1987). In this case, the information in the Memorandum, while factual, could be considered part of the deliberative process because of the author's reason for reciting the facts. However, we need not decide whether the information is purely factual or deliberative because the communication at issue does not relate to the policy-making process of the City of Garland.

In describing the main purpose of exception 5 as encouraging "the free exchange of ideas during the process of deliberation and policy-making," courts apply the exception only when the information at issue involves the policy mission of the agency in some way. *See, e.g., Soucie v. David,* 448 F.2d 1067, 1077 (D.C.Cir.1971); *see also Lett,* 917 S.W.2d at 456. An agency's policy-making functions do not encompass internal administrative or personnel matters, and disclosure of information about such matters will not inhibit free discussion of policy issues among agency personnel. *Lett,* 917 S.W.2d at 456 (documents relating to problems with specific employee do not relate to the making of new policy but merely implement existing policy).

In this case, the Memorandum concerns only the employment relationship between Garland and Hager, its director of finance. Holifield's testimony in his affidavit confirms that the Memorandum was drafted to aid him in "determining how to resolve the employment matter between the City and James Hager." The evidence shows the Memorandum and the resulting discussion did not implicate the policy-making functions of the city council; rather, the council was trying to determine how to implement existing policy in relation to the problems it was experiencing with a particular individual. *See Lett,* 917 S.W.2d at 458. Because Garland failed to bring forth any evidence to show that the Memorandum related to the policy-making function of the City, it cannot rely on the agency memorandum exception.

Because the trial court found that Garland's failure to seek an attorney general's opinion within ten days precluded Garland from relying on any of the statutory exceptions, the court never considered the specific exceptions raised by Garland. We have reviewed the exception put forth by Garland on appeal and conclude Garland failed to present evidence that the Memorandum fell under the exception to the Act. Garland therefore failed to rebut the presumption of openness. Consequently, we affirm the trial court's summary judgment in favor of the News. *See Cincinnati Life,* 927 S.W.2d at 625 (in the interest of judicial economy, appellate courts may consider additional grounds for summary judgment that were properly preserved for review and not specifically ruled on by the trial court). Because the News proved its right to summary judgment and Garland failed to establish its right to summary judgment, the trial court did not err in granting the News's motion

for summary judgment and in denying Garland's motion for summary judgment.

Because we affirm the trial court's summary judgment on the basis that the document is subject to disclosure, we need not reach Garland's other arguments under its first point of error. *See* Tex.R.App. P. 47.1. We overrule points of error one and two.

### RIGHT TO JURY TRIAL FOR DETERMINATION OF ATTORNEY'S FEES

In point of error three, Garland contends that the trial court erred in sustaining the News's objection to a jury trial on the issue of the amount of attorney's fees to be awarded to the News. Garland timely requested a jury trial and paid a jury fee. Garland asserts that by determining section 552.323 of the Texas Government Code does not permit a jury to determine the amount of attorney's fees, the trial judge denied Garland its right to a jury trial under the Texas Constitution.

The News argues that Garland did not preserve a complaint under the Texas Constitution because it did not object on that ground. However, contrary to the News's contention, the record indicates that Garland did assert article one, section fifteen of the Texas Constitution in its objection to the denial of a jury trial. Accordingly, we conclude Garland preserved its claims under the Texas Constitution.

Article one, section fifteen of the Texas Constitution states, "The right to trial by jury shall remain inviolate." Tex. Const. art. I, § 15. Article five, section ten of the Texas Constitution guarantees litigants the right to a jury trial "of all causes in the District Courts." Tex. Const. art. V, § 10. Denials of the right to a jury trial are closely scrutinized.

To determine whether the trial court denied Garland its right to a jury trial, we must first determine whether the statute authorizing the award of attorney's fees prohibits a jury trial on the issue. The statute authorizing attorney's fees in this case is section 552.323 of the Texas Government Code:

(a) In an action brought under Section 552.321 [suit for writ of mandamus under the Act] ..., the court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails.

(b) In exercising its discretion under this section, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.

Tex. Gov't Code Ann. § 552.323 (Vernon 1994).

Garland contends "[t]he trial court erred in granting the News's objection to jury trial on the issue of attorney fees," arguing that the statute authorizing attorney's fees is unconstitutional to the extent it does not permit a jury trial on attorney's fees. The News argues the trial court correctly interpreted the statute as prohibiting a jury trial on attorney's fees and that the statute is constitutional.

The News contends section 552.323 assigns the court the task of determining whether and in what amount to assess attorney's fees to a substantially prevailing party. The News argues that although subsection (a) permits the court to determine whether to assess fees, subsection (b) sets forth what the court must consider in determining the amount of any attorney's fee award. According to the News, the absence of a provision for a jury determination on this issue makes the legislature's intent that the trial court decide this issue clear and unambiguous.

Under section 552.323, the trial court must determine (1) whether to award attorney's fees; and (2) if so, the amount of attorney's fees. The News uses section 552.323(b) to support its position that the trial court has discretion to determine the *amount* of attorney's fees. The News glosses over the court's first determination requiring an exercise of discretion whether to award attorney's fees. Only after the trial court decides that attorney's fees are warranted does any issue as to the amount of attorney's fees arise. The trial court's decision under this statute is similar to a trial court deciding whether to award attorney's fees under other statutes, such as the Declaratory Judgment Act. The attorney's-fees provision for the

Declaratory Judgment Act provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). On the face of this provision, it would appear that the trial court determines the amount of attorney's fees. However, the statute has been interpreted as requiring the trial court to determine in its discretion whether to award attorney's fees and the trier of fact, which may be a jury, to determine the amount of attorney's fees. *See Russell v. City of Bryan,* 919 S.W.2d 698, 708–09 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 708 (Tex.App.—El Paso 1993, no writ); *Howell v. Homecraft Land Dev., Inc.,* 749 S.W.2d 103, 113 (Tex.App.—Dallas 1987, writ denied).

Similarly, the attorney's-fees provision of the Deceptive Trade Practices Act (DTPA) states, "[o]n a finding by the court that [a DTPA] action ... was groundless and brought in bad faith, or brought for purposes of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs." TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon 1987). The trial court determines whether the defendant has met the requirement for recovery of attorney's fees, i.e., whether the action was groundless and brought in bad faith or for purposes of harassment. *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex.1989). Juries can determine the amount of attorney's fees. *See Ocean Transp., Inc. v. Greycas, Inc.,* 878 S.W.2d 256, 274 (Tex.App.—Corpus Christi 1994, writ denied); *Elbaor v. Sanderson,* 817 S.W.2d 826, 828 (Tex.App.—Fort Worth 1991, no writ).

The Texas Open Meetings Act contains a provision for an award of attorney's fees that is identical in all relevant respects to that in the Act:

The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action [for mandamus or injunction under the Open Meetings Act]. In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law.

TEX. GOV'T CODE ANN. § 551.142(b) (Vernon 1994). Under this statute, there is one case where a jury determined attorney's fees. *Austin Transp. Study Policy Advisory Comm. v. Sierra Club,* 843 S.W.2d 683, 686–87 (Tex.App.—Austin 1992, writ denied) (although defendant insisted at trial that all issues on attorney's fees, not just the amount of attorney's fees, be tried to the jury, he argued on appeal that the trial court should not have submitted the issues to the jury; appellate court determined defendant was estopped from presenting the argument because he agreed to the submission of the issues to the jury).

Each of these statutes appears to place the responsibility for determining the amount of attorney's fees with the trial court, yet juries have been used to determine the amount of attorney's fees under each of the statutes. Thus, the News's argument that "[t]he clear and unambiguous language of § 552.323 mandates that the decision ... [of] the amount of ... [attorney] fees is the province of the trial court" is not consistent with the interpretation of statutes containing similar language.

The News also argues that "[t]he legislature could have easily and expressly provided for the right to a jury trial on the issue of attorney fees and costs in connection with ... litigation [under the Act]. Significantly, it did not." However, a review of other statutes shows that the legislature may have expressly indicated when the trial court, and not a jury, is to determine the amount of attorney's fees. For example, Texas Family Code section 231.211(a) states, "At the conclusion of a Title IV–D case, *the court may assess* attorney's fees and all court costs as authorized by law.... Such fees and costs may not exceed reasonable and necessary costs *as determined by the court.*" TEX. FAM.CODE ANN. § 231.211(a) (Vernon 1996) (emphasis added). Article 6132b–7.01 of the Revised Civil Statutes states: "If the court finds that the partnership acted arbitrarily ..., the *court may assess* reasonable attorney's fees ... *in amounts the court finds equitable,*

against the partnership." TEX.REV.CIV. STAT. ANN. art. 6132b–7.01(r) (Vernon Supp. 1998) (emphasis added). Article 5069–8.04 provides: "If an action alleging any violation ... [of the usury laws] is brought as a class action, the class may recover [damages].... The *court may assess* a penalty of: ... (iii) in the case of any successful action to enforce the foregoing liability, ... a reasonable attorney's fee *as determined by the court.*" TEX.REV.CIV. STAT. ANN. art. 5069–8.04(b) (Vernon 1987) (emphasis added). Although no cases discuss the right to a jury determination of attorney's fees under these statutes, the language of each of these statutes clearly indicates that the trial court, not a jury, determines the amount of attorney's fees. (Because the interpretation of these statutes is not an issue before us in this case, our discussion of these statutes should not be considered a holding that these statutes bar jury trials on the amount of attorney's fees.) By providing that the trial court assess the attorney's fees and determine the amount of attorney's fees, these statutes also show that the legislature intended for the word "assess" to mean something other than "determine the amount."

■■■ Conversely, the language of section 552.323 provides that the trial court "may assess" attorney's fees; it does not expressly provide that the trial court "determine" the amount of attorney's fees. Thus, Garland should have been allowed to have a jury determine the amount of the News's attorney's fees. By not permitting a jury trial on the amount of attorney's fees, the trial court denied Garland its right under article five, section ten of the Texas Constitution to a jury trial in district court. The denial of a jury trial raises an inference of probable harm. *See Harris v. Harris,* 679 S.W.2d 75, 77 (Tex.App.—Dallas 1984, writ dism'd). We sustain Garland's third point of error.

We affirm the trial court's judgment in part and reverse it in part, and we remand the cause for a new trial on attorney's fees.